STATE OF MINNESOTA ex rel. WILLIAM P. NISBETT v. MICHAEL J. TOOLE.[1]

June 23, 1897.

Nos. 10,649—(239).

**Extradition—Revocation of Warrant.**
    The governor of a state has the power to revoke his warrant for the

[1] Reported in 72 N. W. 53.

surrender of an alleged fugitive from justice at any time before he is taken out of the state.

**Same—Conclusiveness.**

In a proceeding in habeas corpus on behalf of the alleged fugitive, if it appears that the warrant has been revoked, he must be discharged, and the grounds of such revocation cannot be inquired into.

Petition by relator for a writ of habeas corpus to procure his release from the custody of Michael J. Toole, sheriff of Itasca county. From an order of the district court for Itasca county, O. H. Stilson, Esq., court commissioner, discharging relator, the sheriff appealed. Affirmed.

*Draper, Davis & Hollister* and *C. C. McCarthy*, for appellant.

*Frank F. Price* and *E. M. Card*, for relator.

MITCHELL, J.

Upon the requisition of the governor of Illinois for the extradition of the relator as a fugitive from justice, the governor of Minnesota issued his warrant directed to all the peace officers of the state, and particularly to the sheriff of Itasca county, commanding them to arrest and detain the relator, and deliver him to the agent of the state of Illinois. Under the warrant the sheriff of Itasca county arrested the relator, but upon habeas corpus he was, by the court commissioner of that county, subsequently ordered discharged from custody. From that order the sheriff appealed to this court pursuant to the provision of Laws 1895, c. 327.

It now appears from an affidavit and supplemental pleadings filed in behalf of the relator, the allegations of which are not traversed by the sheriff, that since this appeal was taken the governor of Minnesota, upon a rehearing of the matter, made and issued an order directed to the sheriff of Itasca county annulling and revoking the warrant for the arrest of the relator, and directing the sheriff to make due return to him of that and all former orders, and that in pursuance of such order the sheriff has returned the warrant to the governor.

The question that confronts us at the outset is whether the governor had the power to revoke his warrant, for, if he had, there is now no warrant in existence upon which the relator can be arrested

or detained in custody. In that case he would necessarily have to be discharged, and it would be useless to review the action of the court commissioner. It is a matter of common knowledge that the governors of states have been and are in the habit of recalling and revoking such warrants whenever they become satisfied that they were improvidently issued. The exercise of the assumed power to do this is so frequent, and of such long continuance, that it has become what may be not improperly called the common law of the country on the subject. The existence of this power has been so generally conceded that the question has not often come before the courts, but whenever it has they have invariably held that the governor of a state has this power.

The question was, so far as we can ascertain, first judicially considered in Massachusetts by Justice Bigelow in 1837, and the power of a governor to revoke a warrant of rendition upheld, although, when the case was subsequently brought before the full court, the question was not decided. Wyeth v. Richardson, 10 Gray, 240. See, also, In re Carroll, 11 Chicago Leg. News, 14. The only case we can find in which the question has been passed upon by the highest court of a state is Work v. Corrington, 34 Oh. St. 64, in which, after an exhaustive review of executive and judicial precedents, the court held that, if a warrant for the surrender of a fugitive from justice is obtained in a case in which it should not have been issued, the governor may revoke it; and, where a warrant has been revoked, no inquiry will be made in a proceeding on habeas corpus on behalf of the alleged fugitive as to the grounds of such revocation; also that this power is not limited to cases where the papers presented are insufficient or defective on their face. The views of the text writers are to the same effect. Spear, Extrad. p. 440; Moore, Extrad. § 620.

The principal argument of counsel against the existence of the power of the governor to revoke a warrant once issued is that under the constitution of the United States, in the case of interstate extradition, the duty of the governor to issue a warrant on the production of the requisition in due form is imperative and ministerial, and not discretionary and judicial. We do not feel called upon to go into any extended discussion of the general subject of interstate

rendition, and with the limited time at our command for investigation we are not prepared to do so. We shall merely say that it is unquestionably true that when a case is presented which is clearly one contemplated by the federal constitution, the governor has no discretion, but it is his imperative duty to issue the warrant. That duty, however, is one of imperfect obligation, for, if the governor refuses to perform it, we know of no power, state or federal, to compel him to do so.

But we are not prepared to assent to the proposition that, in determining whether a case contemplated by the constitution is presented, the governor upon whom the demand is made is vested with no discretion, even where the papers are on their face sufficient and in due form. We all know as a matter of fact that governors do exercise a discretion in such cases, and if they are satisfied that the demand is made for some ulterior and improper purpose—as, for example, the collection of a private debt—they refuse to issue a warrant. If a governor may exercise such a discretion in regard to issuing the warrant, we do not see why he may not exercise the same discretion in regard to revoking it; and, if he does revoke it, his reasons for so doing can no more be inquired into than his reasons for refusing to issue it in the first instance. The existence of the power to revoke would seem necessary, in order to prevent great abuses and wrongs. A warrant is, of necessity, almost always issued ex parte, and the governor is liable to be imposed upon by those demanding it, or, for some other cause, to issue it improvidently. It would seem that in such cases the same officer who had the exclusive power to issue the warrant should have the power to remedy the wrong by revoking it. Of course, to be effective for any purpose, the warrant must be revoked before the alleged fugitive is taken out of the state.

Ordered, that the relator be discharged from custody.