(No. 23656.—

THE PEOPLE *ex rel.* Simon DeBardas, Appellant, *vs.* JOHN TOMAN, Sheriff, Appellee.

*Opinion filed October 14, 1936—Rehearing denied Dec. 4, 1936.*

Cohon & Goldstein, for appellant.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Richard H. Devine, Melvin Rembe, James V. Cunningham, and Walter L. McCoy, of counsel,) for appellee.

Mr. Chief Justice Herrick delivered the opinion of the court:

The issue presented here is whether the relator, Simon DeBardas, is lawfully in the custody of the sheriff of Cook county on a warrant of rendition issued by the Governor of this State at the request of the Governor of the State of Missouri.

On July 23, 1935, at the instance of the circuit attorney of the city of St. Louis, Missouri, the relator, Simon DeBardas, was arrested in Chicago on a fugitive warrant charging him with embezzlement. On August 8, 1935, the Governor of Illinois issued his warrant of rendition for the relator at the request of the chief executive of Missouri.

The cause came up for hearing on the fugitive warrant in the felony branch of the municipal court of Chicago, August 9. The messenger from the State of Missouri named in the Governor's warrant was present and exhibited the rendition warrant to the judge of the municipal court before whom the cause was pending. The fugitive warrant was thereupon *nolle prossed*. DeBardas was then arrested by the Cook county sheriff on the Governor's warrant and taken before the chief justice of the criminal court of Cook county, where his bail was fixed at $1000. He was released from custody on his own recognizance, on his representation that a petition for a writ of *habeas corpus* would be filed immediately. Instead of filing such petition application was made by him to the Governor of this State for a hearing on the matter of the issuance of the rendition warrant. On August 9 the Cook county State's attorney's office received a message from an agent of the Governor, stating, in substance, that the warrant was "revoked pending a hearing before him." Formal notice was also served upon the State's attorney notifying him such hearing was set for September 6, 1935. The warrant was immediately returned to the Governor. On August 13 the criminal court entered an order discharging the defendant from the Governor's warrant and releasing his recognizance. On the same day a new fugitive warrant was issued, under which the relator was taken into custody. He was released by the municipal court on bail of $1000. The cause was continued until September 13. Nothing further was done in the latter case pending the hearing before the Governor. The Governor later heard the defendant's application but declined to interfere. His warrant was re-delivered to the sheriff of Cook county, who arrested the defendant thereunder on January 7, 1936. On the same day the relator filed his petition for a writ of *habeas corpus* in the criminal court of Cook county. Return was made by the sheriff setting up the Governor's warrant as his authority for hold-

ing the relator. The cause was heard on February 4, 1936. The criminal court remanded the relator to the custody of the sheriff, to be by him delivered to the messenger from the State of Missouri. The relator brings the record of that cause here for review.

The grounds for reversal urged by the relator are: (1) That he was held to bail longer than six months after his caption; (2) that he was not substantially charged with a crime against the laws of the demanding State; (3) that he was discharged from the Governor's warrant on August 13, 1935, and that this amounted to *res adjudicata* as to all future hearings on that warrant; and (4) that he was not in the State of Missouri on the date charged in the affidavit of the complaining witness that the alleged offense was committed. The issues so made will be disposed of in the order named.

In support of his first assignment of error the relator cites and relies upon section 5 of the statute relating to fugitives from justice. A portion of that section provides: "In no case shall the accused be held in prison or to bail longer than six months after his caption. If he is not demanded within that time, he shall be discharged from prison, or exonerated from his recognizance, as the case may be." State Bar Stat. 1935, chap. 60, p. 1715.

It is earnestly urged by the relator that by reason of the fact that more than six months intervened between the date of the relator's first arrest under the Governor's warrant and the day he was taken into custody by the sheriff for delivery to the agent of the State of Missouri his detention was unlawful. As sustaining his position he relies upon section 5, *supra,* and cites as analogous the cases of *People* v. *Schmagien,* 361 Ill. 371, and *People* v. *Emblen,* 362 id. 142. In each of the cases cited the provisions of section 18 of division 13, as amended, of the Criminal Code of this State, (State Bar Stat. 1935, chap. 38, par. 771, p. 1256,) were before the court. That section provides where a de-

fendant has been committed for a supposed criminal offense but not admitted to bail and not brought to trial by the court having jurisdiction of the offense, within four months from the date of his commitment, unless the delay shall happen upon the application of the prisoner, he shall be entitled to his discharge. In neither the *Emblen* nor *Schmagien case, supra,* was the delay in bringing him to trial occasioned by the defendant. The record here conclusively establishes that on August 9, 1935, the agent of the Missouri executive was present in the criminal court for the purpose of taking the relator into custody under the Governor's warrant, but on the relator's representation made to that court that he was going to institute a *habeas corpus* proceeding he was not then delivered to the Missouri agent. Instead of commencing a suit in *habeas corpus* the proceeding before the Governor was put in motion and the hearing thereon set down for September 6. The agent of the Governor of Missouri was not on August 9 able to obtain the custody of the relator because of the relator's action in inducing the criminal court to believe he would immediately file a petition in *habeas corpus*. The demanding agent was unable to obtain the custody of the relator within six months from his first arrest under the Governor's warrant because of the delay occasioned by the action of the relator. The postponement was not procured by reason of any request on the part of the law-enforcement officers of the State of Missouri nor of its messenger. In that situation the relator cannot be permitted to urge that he was either held in prison or to bail longer than six months after his caption without anyone seeking to return him to the demanding State, and therefore entitled to discharge under the provisions of section 5.

The affidavit of Henrietta M. Kring attached to the demand made by the Governor of Missouri upon the Governor of Illinois for the issuance of the rendition warrant charges the relator as being her agent, clerk, collector and

servant, and that by virtue of such employment in the city of St. Louis, he on July 25, 1929, received and took into his possession and under his care and control two deeds of trust of the amount and value of $12,000, the money and personal property of her, the employer, and that the relator did then and there unlawfully, feloniously, fraudulently and intentionally embezzle and convert the same to his own use without the consent of the complaining witness, the owner of such deeds, and with the unlawful, felonious and fraudulent intent then and there to deprive her of the use thereof, contrary to the form of the statute. While the information filed by the assistant circuit attorney of the city of St. Louis may be subject to technical defects, yet it is sufficient on the present hearing. The defendant is substantially charged with a crime against the laws of the demanding State.

The Governor in issuing a warrant for rendition at the demand of a sister State acts in his official capacity. The warrant is under the control of the Governor at all times so long as the fugitive has not been removed from his State under the authority of such warrant. The Governor of the asylum State issuing the warrant can revoke it at his pleasure if in his opinion it has been obtained by improper means. (*Work* v. *Corrington*, 34 Ohio St. 64, 32 Am. Rep. 345; *State of Minnesota* v. *Toole*, 69 Minn. 104, 72 N. W. 53, 38 L. R. A. 224.) His control over the warrant being established, if upon investigation he determines that the warrant was improperly suspended, it follows he can vacate such order and cause the warrant to be re-instated. The record here shows that the Governor's supposed revocation of the warrant was conditional, only, and was intended to be temporary; that, at most, its alleged revocation was merely pending the hearing of the relator's application for the warrant's revocation. The use of the word "revoked" by the Governor's agent in the message he sent the State's attorney was unfortunate and ill-advised. It is quite evident that the warrant was not revoked in the legal

sense. The Governor had the right to order his suspension of the warrant be vacated and the warrant re-delivered for execution to the sheriff of Cook county. Nor was the discharge of the relator by the criminal court when it was made to appear to that court that the Governor's warrant had been temporarily suspended an adjudication which barred the relator's further arrest on such warrant. That warrant was not *functus officio*.

The relator contends that he was not a fugitive from the State of Missouri because the information charges the commission of the crime on the 25th day of July, 1929. The relator offered evidence tending to support his claim that he was not on July 25, or within two or three days before and after that date, in the State of Missouri. Opposed to this was the testimony of the prosecuting witness that she saw the relator in St. Louis during the latter part of July. She fixed the date at July 25. While this created a conflict as to whether the relator was in the State of Missouri on the date alleged in the information, yet it was not within the province of the trial court, on a *habeas corpus* proceeding, to decide that issue. (*People* v. *Toman,* 362 Ill. 516.) Nor was it required that the information charge the exact date correctly. If the evidence tended to show that the accused was in the demanding State at or about the time alleged as the commission of the offense it was sufficient. *Strassheim* v. *Daily,* 221 U. S. 280, 55 L. ed. 735.

The judgment of the criminal court of Cook county was in accordance with the law, and is affirmed.

*Judgment affirmed.*